IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ELISE POOLE, and JACKIE BUNTGEN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LINCOLN, LANCASTER COUNTY, JEFF BLIEMEISTER, Lincoln Police Chief; TERRY WAGNER, Lancaster County Sheriff; and OFFICERS JANE OR JOHN DOES, 1-21, in their individual capacities as employees of Lancaster County and/or the City of Lincoln;<br><br>Defendants. | **4:21CV3030**<br><br><br>**MEMORANDUM AND ORDER** |

Plaintiff Elise Poole ("Poole") participated in protests and demonstrations in downtown Lincoln, Nebraska on May 30 and May 31, 2020. (Filing No. 1 at CM/ECF p. 5). Plaintiffs allege Poole was seriously injured when Defendants, in response to the peaceful and lawful demonstration, shot rubber bullets and other "less-lethal munitions" at the protesters. Poole was eighteen at the time, and a minor under Nebraska law. Her mother, Plaintiff Jackie Buntgen ("Buntgen"), is responsible for paying Poole's medical expenses incurred on May 31, 2020.

Plaintiffs' complaint seeks relief under 42 U.S.C. § 1983 for violations of Poole's First, Fourth, and Fourteenth Amendment rights and civil conspiracy. Plaintiffs also allege a state negligence claim.

Defendants, the City of Lincoln ("City") and Police Chief Jeff Bliemeister, in his individual and official capacities, ("collectively City Defendants") move to

dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P 12(b)(1) and 12(b)(6). (Filing No. 20). Defendants Lancaster County, Nebraska ("County") and Lancaster County Sheriff Terry Wagner, in his official and individual capacities, (collectively "County Defendants") likewise move to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Filing No. 17). In addition the County Defendants move to partially strike the complaint pursuant to Fed. R. Civ. P. 12(f). (Filing No. 17).

The motions to dismiss will be granted in part and denied in part. The County Defendants' motion to strike will be denied.

MOTIONS TO DISMISS

I.    Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Corrado v. Life Inv'rs Ins. Co. of Am., 804 F.3d 915, 917 (8th Cir. 2015) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Barton v. Taber, 820 F.3d 958, 964 (8th Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual

allegations." McDonough v. Anoka Cty., 799 F.3d 931, 945 (8th Cir. 2015) (quoting Ashcroft, 556 U.S. at 678).

II.    Plaintiff's Complaint

Plaintiffs' complaint alleges:

On May 30 and 31, 2020, Ms. Poole participated in peaceful protests in downtown Lincoln, Nebraska. She was unarmed. (Filing No. 1, at CM/ECF p. 1).

While participating in protests on May 30, 2020, Poole was exposed to law enforcement weapons, including pepper spray, deployed by Defendants as a method of crowd control. (Filing No. 1, at CM/ECF p. 6).

During the evening protest on May 31, 2020, at approximately 10:00 p.m., Poole and her fellow protesters moved toward 12th and H Streets in Lincoln, Nebraska. As they reached that area, they were met by a line of law enforcement officers in riot gear, all of whom were employees with or agents of the City of Lincoln and/or Lancaster County. (Filing No. 1, at CM/ECF pp. 2, 4).  Plaintiffs do not currently know the precise number and identity of these officers, but each officer was acting under color of state law and within the course and scope of his or her employment. (Filing No. 1, at CM/ECF p. 4). Many of these officers were not trained on crowd control methods, or on how or whether to use projectiles, such as KIPs, rubber bullets, and eXact iMpact Sponge Rounds when performing their duties. (Filing No. 1, at CM/ECF pp. 3, 9). Although categorized as "less-lethal," a strike from these projectiles can nonetheless be lethal or cause serious injuries. (Filing No. 1, at CM/ECF p. 4).

Upon arriving at the 12th and H area, the protesters kneeled on the sidewalk and chanted "hands up, don't shoot!" ([Filing No. 1, at CM/ECF p. 7](#)). The Defendant Officers responded by indiscriminately firing KIPs, rubber bullets, and eXact iMpact Sponge Rounds at them. This response was due to the actions of a few alleged "agitators" and in response to the verbal barrage leveled at the officers on May 30, 2020. ([Filing No. 1, at CM/ECF pp. 3-5](#)).

Poole attempted to leave the area before gas canisters were thrown or projectiles were fired by the Defendant Officers (Officers Jane or John Does, 1-21, in their individual capacities as employees of Lancaster County and/or the City of Lincoln, also referred to hereafter as the "Doe Defendants"). However, the Officers used their vehicles to block points of entry to and exit from the area. ([Filing No. 1, at CM/ECF p. 8](#)). As Poole attempted to leave, an officer (specific identity unknown) threw a gas canister which exploded directly in front of Poole, impairing her vision and further restricting her mobility. ([Filing No. 1, at CM/ECF p. 8](#)). Seconds later, an officer (specific identity unknown) indiscriminately shot a rubber bullet into the crowd. The rubber bullet struck Poole's face at close range, severing her nose from her face. ([Filing No. 1, at CM/ECF pp. 2](#), 8-9). Poole immediately dropped to the ground. ([Filing No. 1, at CM/ECF p. 8](#)).

At the time this shot was fired, there was no reasonable basis for firing projectiles at or near Poole or anyone else gathered on the sidewalk. ([Filing No. 8](#)). Poole did not commit a crime, and she was not suspected of committing a crime. Poole did not pose a threat to Defendants or anyone else. ([Filing No. 1, at CM/ECF p. 11](#)).

Due to their senior roles in their respective departments, the decisions of Lincoln Police Chief Jeffrey Bliemeister and Lancaster County Sheriff Terry Wagner represent the official policy of the City of Lincoln and Lancaster County,

respectively. ([Filing No. 1, at CM/ECF p. 9](#)). Prior to May 31, 2020, Bliemeister and Wagner knew the LPD officers and Sheriff's Office deputies were indiscriminately using less-lethal force against protestors to control and suppress demonstrations when there was no imminent threat to safety. Yet, Bliemeister and Wagner met, discussed, and approved the use of weaponry, including rubber bullets and eXact iMpact Sponge Rounds, prior to the May 31, 2020 demonstrations. With deliberate indifference to others, Bliemeister and Wagner equipped their officers with "less-lethal" weaponry without providing any training and instruction on how and when to use such weaponry. ([Filing No. 1, at CM/ECF pp. 9-10](#)). Bliemeister and Wagner failed to act to remedy the ongoing violations of the protestors' constitutional rights by the LPD officers and Sheriff's Office deputies, respectively, by failing to train, supervise, or discipline the officers and deputies or issue corrective policies to prevent further violations. In addition, Bliemeister and Wagner acted with deliberate indifference by failing to rectify the LPD's and the Sheriff's Office's unconstitutional custom of using less-lethal force to control and suppress peaceful demonstrations. ([Filing No. 1, at CM/ECF pp. 10-11](#)).

All the Defendants agreed with, assisted, and supported each other when they approached the group of peaceful protesters during the night of May 31, 2020. Consistent with their joint agreement and efforts, they collectively used rubber bullets other means of "non-lethal" force to disperse the demonstration, failed to intervene to stop the indiscriminate, excessive and unlawful use of rubber bullets, and advised, assisted, ratified and/or directed the actions and inactions which caused Poole's injuries. ([Filing No. 1, at CM/ECF p. 9](#)). The use of non-lethal force violated the constitutional rights of the protesters, and it was done in a negligent manner inconsistent with the safe and effective use of such force in direct violation of the City's policies. ([Filing No. 1, at CM/ECF p. 8](#)).

Plaintiffs allege that due to the Defendants' conduct, Poole was severely and permanently injured, with Buntgen obligated to pay Poole's medical expenses resulting from Defendants' actions and inactions. Plaintiffs seek recovery of their damages.

III.  Plaintiffs' Claims

Plaintiffs' complaint identifies five counts. Counts I through IV seek recovery under 42 U.S.C. § 1983; Count V is a common law negligence claim brought under Nebraska's Political Subdivision Tort Claims Act ("PSTCA"). Defendants ask the court to dismiss all these claims.

A.  Claims Under 42 U.S.C. § 1983

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege sufficient facts to show "(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010). Here, there is no dispute that the actions of the defendants were conducted under color of state law. The question is whether Plaintiffs have sufficiently alleged that Defendants' actions or inactions violated Poole's First Amendment rights (Count I); her Fourth Amendment rights (Count II); her Fourteenth Amendment rights (Count III); and were performed as part of a civil conspiracy to violate Poole's constitutional rights (Count IV).

In summary, Defendants' motions to dismiss the § 1983 claims advance the following arguments:

As to all defendants:

- The claims must be dismissed because the complaint fails to state the names of the Doe defendants, the identity of their employer, and/or any information from which the Doe defendants' identities could be ascertained.

- Plaintiffs' Fourteenth Amendment claim (Count III) must be dismissed because under the circumstances presented, Plaintiffs' §1983 claims arise under the First Amendment (Count I) and Fourth Amendment (Count II), not the Fourteenth Amendment.

<u>Defendants sued in their individual capacity</u>

- As to Defendants Jeff Bliemeister and the Jane or John Doe officers of the City, in their individual capacities, the complaint must be dismissed based on qualified immunity.

- The supervisor liability claim against Defendant Jeff Bliemeister, in his individual capacity, must be dismissed for failure to state a claim.

<u>Governmental entity claims</u>

- The City of Lincoln and the County of Lancaster (including the official capacity claims against Defendants Bliemeister and Wagner)[1] argue the Plaintiffs' complaint fails to state the requisite allegations for a § 1983 claim against political subdivisions. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691 (1978).

---

[1] Plaintiffs § 1983 claims against Bliemeister and Wagner in their official capacities are interpreted as claims against the City and County. See Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010) ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity.").

Each of the foregoing arguments will be addressed, in turn, below.

1)      Claims as to all defendants

a.      Failure to Identify the Officer(s) Involved

The Defendants allege Plaintiffs' complaint must be dismissed because the core allegation is that Poole was injured by a rubber bullet and Plaintiffs' complaint fails to identify or sufficiently allege facts to identify the officer who shot the bullet. They claim Plaintiffs have not pleaded a causal link between Poole's injuries and the City Defendants and/or County Defendants because Plaintiffs cannot name, identify, or describe the person who allegedly fired the weapon or the persons who were involved in the alleged seizure. Defendants claim that without the identity of the officer or officers who were directly involved, they lack proper notice to reasonably defend against Plaintiffs' claims.

In response, Plaintiffs argue that, as stated in the complaint, Poole was injured by the Doe officers and her vision was impaired. They further argue the officers were wearing tactical gear making their identification difficult and this is a reason to permit, not foreclose, discovery as to the officers' identities. Plaintiffs argue they should be given the opportunity to engage in reasonable discovery to identify the Doe Defendants, including the officer who fired the rubber bullet which injured Poole.

Generally, fictitious parties may not be named as defendants in a civil action. Phelps v. United States,  15 F.3d 735, 739 (8th Cir. 1994). However, an action may proceed against an unnamed party if the complaint makes sufficiently specific allegations to permit the identity of the party to be ascertained after reasonable

discovery. Logan v. Doe 1-4, No. 4:17-cv-1495 2017 WL 2591779 at 2 (E.D. Mo. June 14, 2017), citing Mum v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985).

Unnamed defendant officers cannot be held liable under §1983 merely because they were employed by a law enforcement department on the night some members of that department may have violated the plaintiffs' rights. Alicia St. v. O'Toole, No. 4:19 CV 2590 CDP, 2021 WL 677909, at 4 (E.D. Mo. Feb. 22, 2021). But unlike the allegations in Alicia Street, Plaintiffs' complaint herein alleges the Doe officers are the twenty-one law enforcement employees from either the City of Lincoln or Lancaster County, "who responded to protests on behalf of the City of Lincoln on May 30 through June 5, 2020." (Filing No. 1, at CM/ECF p. 4 ¶ 16). Plaintiffs allege Poole was seized by the cooperative efforts of the officers when they kettled protesters and used force and rubber bullets to limit or prohibit her freedom of movement. The complaint alleges the specific time and place of the alleged violations, that the Doe defendants worked together to block points of entry and exit from the 12th and H area, and that they used gas canisters and projectiles to restrict Poole's movement and cause injury following a peaceful demonstration. Plaintiffs' complaint also includes a photograph of some of the alleged offending officers.

Drawing from the allegations within the complaint, the City Defendants and County Defendants may be able to ascertain which of their officers were involved in the 12th and H incident at issue, and the name of the officer who shot the rubber bullet that injured Poole. They may know the identity of the officer already. Simply stated, the defendants have a far superior ability to accumulate and study the available records and documents regarding the officers personally involved and perhaps individually responsible for Plaintiffs' damages. Plaintiffs can serve discovery targeted at uncovering the defendants' information to specifically identify the relevant Doe defendants.

The court acknowledges that Plaintiffs cannot obtain a judgment against the Doe Defendants, in their individual capacities, without first identifying these officers. But at this early stage of the lawsuit, before Plaintiffs have been afforded an opportunity to serve discovery, their claims will not be dismissed under Rule 12(b)(6).

b.    Count III – Fourteenth Amendment Claim

The City Defendants and County Defendants move to dismiss Plaintiffs' claim under the Fourteenth Amendment, arguing that the claim is redundant to the excessive force claims brought under the Fourth Amendment. Plaintiff seemingly agrees, asserting in response "that the excessive force claim can be analyzed under either the Fourth or Fourteenth Amendment, but not both." (Filing No. 25 at CM/ECF p. 25).

To the extent that Plaintiffs allege a violation based on the use of excessive force to effectuate a seizure, this claim is to be analyzed under the Fourth Amendment rather than the Fourteenth. See Graham v. Connor, 490 U.S. 386, 395 (1989). (holding that "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." (emphasis in original)). Plaintiff's claim for violation of the Fourteenth Amendment based on the seizure and use of excessive force will be dismissed.

Defendants also assert that the Fourteenth Amendment claim is redundant of Plaintiffs' First Amendment claim, which they argue must fail, because they have not adequately alleged a First Amendment violation. As explained below, Plaintiffs

have adequately pleaded a claim for a First Amendment violation. The Supreme Court has explained:

> Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."

Albright v. Oliver, 510 U.S. 266, 273, (1994), quoting Graham v. Connor, 490 U.S. at 395. As applied to this case, because Plaintiffs' substantive due process claims arose out of her claims for violation of her First Amendment rights, Plaintiffs' claims for retaliation for engaging in speech is analyzed as a First Amendment claim, and not under the Fourteenth Amendment. Since the First Amendment properly covers Plaintiffs' claims related to the interference with her alleged right to speech, assembly, and protest, her Fourteenth Amendment substantive due process claim will be dismissed.

### 2) Individual Capacity Claims

#### a.   Qualified Immunity

The City defendants sued in their individual capacity argue Plaintiffs' §1983 claims must be dismissed based on qualified immunity. Qualified immunity is an affirmative defense that supports dismissal under Fed. R. Civ. P. 12(b)(6) only when qualified immunity is established on the face of the complaint. Kiesling v. Holladay, 859 F.3d 529 at 533 (2017); Whisman v. Rinehart, 119 F.3d 1303, 1309 (8th Cir.1997). Qualified immunity shields public officials performing discretionary functions from liability for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Parker v. Chard, 777 F.3d 977, 979 (8th Cir. 2015); see, Messerschmidt, 132 S. Ct. 1235 at

1244 (2012); Pearson v. Callahan, 555 U.S. 223, 231 (2009). It balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. Pearson, 555 U.S. at 231. Qualified Immunity gives officials breathing room to make reasonable but mistaken judgments about open legal questions and protects all but the plainly incompetent or those who knowingly violate the law. Parker, 777 F.3d at 979-80.

On a motion to dismiss, the qualified-immunity inquiry is a two-step process. Whisman v. Rinehart, 119 F.3d at 1309. To prevail at this stage of the proceedings, defendants must show that the allegations within Plaintiffs' complaint establish that Plaintiffs' constitutional or statutory rights were not violated or, assuming they were, those  rights were not clearly established at the time of the alleged violation such that a reasonable official would have known that his actions were unlawful. Johnson v. Phillips, 664 F.3d 232, 236 (8th Cir. 2011); see Parker, 777 F.3d at 980.

     i.     Count I—First Amendment claim

The City Defendants assert the Bliemeiester and the Doe Defendants, in their individual capacity, are entitled to qualified immunity because "Poole suffered no First Amendment constitutional violation" and was not retaliated against for exercising her First Amendment rights. (Filing No. 22 at CM/ECF p. 8). The City argues Poole was not entitled to First Amendment protection during the protest activity at 12th and H because she was violating the city's curfew. The alleged curfew violation is not mentioned in Plaintiffs' complaint.

Plaintiffs argue Defendants' use of force was motivated by and was in retaliation for her engagement in First Amendment protected activity, and that Defendants' actions were an effort to deter future similar activity.

> In order to overcome qualified immunity and state a plausible claim for interference with [her] First Amendment rights under § 1983, a plaintiff must show that a state actor impeded [her] ability to exercise a clearly-established constitutional right. Pearson, 555 U.S. at 232, 129 S.Ct. 808. A plaintiff bringing a First Amendment retaliation claim under § 1983 may show that officers violated [her] constitutional rights if "(1) [s]he engaged in a protected activity, (2) [officers] took adverse action against [her] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004).

Waters v. Madson, 921 F.3d 725, 741 (8th Cir. 2019).

> Plaintiffs' complaint alleges:
>
> "Defendants' decision to shoot Ms. Poole with a rubber bullet violates the First Amendment in at least five ways: i) as unconstitutional retaliation for expressive conduct protected under the First Amendment; (ii) as a violation of the right to peaceably assemble; (iii) as an unconstitutional restriction to a traditional public forum; (iv) as unconstitutional content- and viewpoint -based discrimination; and (v) as a violation of Ms. Poole's right to record matters of public interest.

Filing No. 1 at CM/ECF p. 11, ¶ 57).

Specifically, she alleges: (1) Poole's rights to assemble, protest, and demonstrate peaceably are protected, (Filing No. 1 at CM/ECF p. 12, ¶ 59); (2) the conduct was the proximate cause of her injuries and chilled her desire to participate in future protests, (Filing No. 1 at CM/ECF p. 12, ¶ 62); and (3) Defendants' use of force against her and others was motivated by the protesters' and Poole's First Amendment protected activity and was an effort to deter future similar activity, (Filing No. 1 at CM/ECF p. 12, ¶ 61).

"[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." McCutcheon v. Fed. Election Com'n, 572 U.S. 185, 203 (2014). "Organized political protest is a form of 'classically political speech.' " Don't Shoot Portland v. City of Portland, No. 3:20-CV-00917-HZ, 465 F.Supp.3d 1150, 1155 (D. Or. June 9, 2020) (quoting Boos v. Barry, 485 U.S. 312, 318 (1988)). And this protection includes criticism of public officials even when it is "vehement, caustic, and sometimes unpleasantly sharp." Leonard v. Robinson, 477 F.3d 347 (6th Cir. 2007) (internal citations omitted). Breathe v. City of Detroit, 484 F. Supp. 3d 511, 517–18 (E.D. Mich. 2020), order clarified, No. 20-12363, 2020 WL 8575150 (E.D. Mich. Sept. 16, 2020).

The City Defendants argue Poole had no First Amendment right to protest on the Lincoln city streets at 10:00 p.m. on March 31, 2020 because the protest violated the city's curfew. "Poole was violating the curfew order at the time of her injury and is unable to plead facts to support the contention she was engaged in protected activity so her First Amendment retaliation claim fails on its face." (Filing No. 22, at CM/ECF p. 10). The City Defendants argue the curfew was a reasonable and enforceable "time, place, and manner" restriction on Poole's First Amendment rights, and "[b]ecause Poole suffered no First Amendment constitutional violation, the court does need not continue with the qualified immunity analysis and should conclude the LPD Officers are entitled to qualified immunity on Plaintiffs' First Amendment claims." (Filing No. 22, at CM/ECF p. 8). But assuming Poole violated the city-wide curfew, the question is whether the law enforcement response in this case exploited their crowd control, seizure and arrest powers as a means of suppressing speech; whether the officers would typically exercise their discretion to shoot rubber bullets at protesters at close range because the protesters violated a curfew. Nieves v. Bartlett, 139 S. Ct. 1715, 1727 (2019) (quoting Lozman v. City

of Riviera Beach, Fla., 138 S. Ct. 1945 (2018)).  Plaintiffs are entitled to discovery on that issue.

Plaintiffs have pleaded sufficient facts to support all elements of a retaliation claim against Defendants for purposes of a Rule 12(b)(6) challenge. Therefore, her First Amendment claim will survive Defendants' Motion to Dismiss. See Agnew v. St. Louis Cty., No. 4:19-CV-03063-SEP, 2020 WL 7023933, at *7 (E.D. Mo. Nov. 30, 2020). And since the qualified immunity claims are based on a premise that no First Amendment violation occurred, the claims against those City Defendants sued in their individual capacity will not be dismissed at this time.

ii.    Count II—Fourth Amendment claim

Plaintiffs allege Poole's right to be free from unlawful seizure and excessive force were violated while she engaged in constitutionally protected activity. The City Defendants allege the LPD Officers are entitled to qualified immunity as to any alleged Fourth Amendment violations because Plaintiffs fail to plead facts establishing Poole was deprived of her Fourth Amendment constitutional rights and that Plaintiffs "do not adequately allege that LPD Officers engaged in any conduct that violated clearly established constitutional rights of which a reasonable officer would have known." Filing No. 22 at CM/ECF p. 12).

"A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority." Quraishi v. St. Charles County, 986 F.3d 831, 839 (8th Cir. 2021). Whether a person has been seized turns on whether, "in view of the totality of circumstances surrounding the incident, a reasonable person would have believed he was free to leave." United States v. Johnson, 326 F.3d 1018, 1021 (8th Cir. 2003). Courts consider "the presence of several officers, a display of a weapon by an officer, physical touching of the

person, or the 'use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " United States v. Flores-Sandoval, 474 F.3d 1142, 1145 (8th Cir. 2007).

> The Supreme Court has explained that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). An officer's use of force will violate the Fourth Amendment if it is not "objectively reasonable." Id. at 397, 109 S.Ct. 1865. Because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving"—the reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396–97, 109 S.Ct. 1865. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. at 396, 109 S.Ct. 1865 (quotation omitted).

Peterson v. Kopp, 754 F.3d 594, 600 (8th Cir. 2014). Determining whether the force used to effectuate a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. Graham v. Connor, 490 U.S. 386, 396, (1989).

The reasonableness inquiry is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Brown v. City of Golden Valley, 574 F.3d 491 (2009). Circumstances relevant to the reasonableness of the officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." Id. at 497.

Deploying less lethal munitions, such as pepper spray, tear gas, and rubber bullets, may be objectively reasonable if the officer is attempting to thwart a serious crime or believes he or she is in immediate danger or Brown v. City of Golden Valley, 574 F.3d 491, citing Lawyer v. City of Council Bluffs, 361 F.3d 1099 (8th Cir. 2004)(where an officer deployed pepper spray inside of a vehicle when a driver's car window rolled up while the officer's arm was inside and the officer was faced with the possibility that his arm would become trapped if the vehicle began to move). But it is also clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public. Brown v. City of Golden Valley, 574 F.3d at 499. See, also Williams v. Strickland, 917 F.3d 763, 770 (4th Cir. 2019); Deville v. Marcantel, 567 F.3d 156, 169 (5th Cir. 2009); Vanderhoef v. Dixon, 938 F.3d 271, 279–81 (6th Cir. 2019); McAllister v. Price, 615 F.3d 877, 885-86 (7th Cir. 2010); Orn v. City of Tacoma, 949 F.3d 1167, 1178–80 (9th Cir. 2020); Liberal v. Estrada, 632 F.3d 1064, 1078–79 (9th Cir. 2011); Winterrowd v. Nelson, 480 F.3d 1181, 1186 (9th Cir. 2007); Davis v. Clifford, 825 F.3d 1131, 1136–37 (10th Cir. 2016); Lee v. Ferraro, 284 F.3d 1188, 1199 (11th Cir. 2002)

Here, Plaintiffs allege Poole was protesting peacefully, she did not commit a crime, and she was not suspected of committing a crime. (Filing No. 1 at CM/ECF p. 12). Even assuming she was violating a curfew, that violation could easily be construed as a very minor law infraction. The complaint alleges Poole and other peaceful protestors marched to the area of 12th and H Streets where they were met by approximately 15 law enforcement officers in riot gear. (Filing No. 1 at CM/ECF p. 2). According to the complaint, Poole and her friends were kneeling on the sidewalk chanting "hands up, don't shoot!" when officers marched toward the protestors, drew weapons and began "firing pepper balls and tear-gas canisters indiscriminately into a peaceful crowd." (Filing No. 1 at CM/ECF p. 8 ¶ 37). The complaint alleges Poole was seized when Defendants' officers terminated her

freedom of movement. ([Filing No. 1 at CM/ECF p. 12](#) ¶ 66). Plaintiffs allege that when Poole attempted to leave the 12th and H area, Defendants used "less lethal munitions" and vehicles to keep her from leaving. Plaintiffs allege the Defendant Officers tossed a gas canister in front of her, impairing her vision and further restricting her mobility, and a Defendant Officer then fired a rubber projectile toward her face, nearly severing her nose. (Id. at ¶¶ 38-40).

Read in the light most favorable to Plaintiffs, the complaint alleges Poole was suspected of committing, at most, the minor and nonviolent crime of failing to comply with a city-wide curfew, and she was posing no risk of harm to the officers or the public. Yet, the Defendant Officers responded to her presence at 12th and H Streets by subduing her with tear gas and shooting her in the face with a rubber bullet. Assuming these facts are true, the Defendants' response to Poole's involvement in a peaceful protest violated Poole's Fourth Amendment rights, and under clearly established law at the time, their response was unreasonable.

On the face of the complaint, there is no basis to grant qualified immunity. Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' Fourth Amendment claim will be denied.

iii.    Count IV--Civil Conspiracy claim

To prove a claim for conspiracy to violate civil rights, the plaintiff must prove: (1) that the defendants conspired with others to deprive [her] of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured [her]." [Holmes v. Slay, 895 F.3d 993, 1001 (8th Cir. 2018)](#).

> "[T]he plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." Id. However, "[t]he plaintiff can satisfy this burden by pointing to at least some facts [that] would suggest the defendants reached an understanding to violate his rights." Id. (cleaned up); see also White v. McKinley, 519 F.3d 806, 816 (8th Cir. 2008). "[T]he question of the existence of a conspiracy to deprive the plaintiff of his constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims." Bonenberger, 810 F.3d at 1109 (cleaned up).

Holmes v. Slay, 895 F.3d 993, 1001 (8th Cir. 2018).

Plaintiff's complaint alleges that the Officers, and "municipal policymakers"[2] met to discuss the response to protest activity. (Filing No. 1 at CM/ECF p. 13 ¶ 78). It alleges they discussed and reached a mutual understanding to take a course of conduct including use of rubber bullets, kettling, arrest, and detention in response to First Amendment activity. (Filing No. 1 at CM/ECF p. 14 ¶ ¶ 79-80). It further alleges the plan and conspiracy was furthered by these overt acts, and as a direct and proximate cause of the conspiracy, Poole was deprived of her First, Fourth, and Fourteenth amendment rights and was severely and permanently injured. (Filing No. 1 at CM/ECF p. 14 ¶ 82; Filing No. 1 at CM/ECF p. 14 ¶ 85). The complaint alleges the Bliemeister and Wagner, in both their individual and official capacities, met and agreed on this course of action, and then implemented

---

[2] The City Defendants argue "Notably, Plaintiffs fail to define who the 'municipal policymakers' are. Former Police Chief Bliemeister is defined as collectively with Lancaster County Sheriff Terry Wagner as 'Officials', but never as a 'municipal policymaker.' Because there are no allegations in this cause of action against either City Defendant, Plaintiffs civil conspiracy claim against Bliemeister and City should be dismissed." (Filing No. 22 at CM/ECF p. 20). The City Defendants are incorrect. The complaint alleges Bliemeister was "the chief policymaker for the Lincoln Police Department" which is a municipality and it makes parallel allegations about Wagner and the County. (Filing No. 1 at CM/ECF p. 4, ¶ 13). Read in favor of the plaintiffs, the complaint alleges Bliemeister and Wagner were policymakers for the City of Lincoln police department and the County of Lancaster Sheriff's Department, respectively.

it. Plaintiffs have pleaded sufficient facts to plausibly state a claim for civil conspiracy against Defendants for purposes of a Rule 12(b)(6) challenge.

The City Defendants' brief does not explain how their allegedly conspiratorial plan to curtail Poole's rights could be construed as objectively reasonable and not in violation of any clearly established law. Conclusory statements in the City's brief do not support dismissal of Plaintiffs' civil conspiracy claims based on qualified immunity.

To summarize, for all the foregoing reasons, the motion to dismiss claims against the City Defendants sued in their individual capacities based on a defense of qualified immunity will be denied.

b.     Chief Bliemeister, in his individual capacity (supervisor liability)

The City Defendants move to dismiss Plaintiffs' inadequate supervision claims against Chief Bliemeister in his individual capacity. "To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." Parsons v. McCann, 138 F. Supp. 3d 1086, 1101 (D. Neb. 2015). "A supervisor may be held individually liable under § 1983 'if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.'" Laganiere v. Cty. of Olmstead, 772 F.3d 1114, 1117 (8th Cir. 2014) (quoting Wever v. Lincoln Cty., 388 F.3d 601, 606 (8th Cir. 2004)); see also Marsh, 902 F.3d at 754. A supervisor's personal involvement may also be found "if he is involved in 'creating, applying, or interpreting a policy' that gives rise to unconstitutional conditions." Id. (quoting Bonner v. Outlaw, 552 F.3d 673, 679 (8th Cir. 2009)).

The City asserts "Nowhere in the Complaint do Plaintiffs describe anything Bliemeister did except exist as the police chief at the time Poole was injured." (Filing No. 22 at CM/ECF p. 5). This statement is inaccurate, as the Complaint refers to Bliemeister and Wagner[3] throughout as "Officials" and "policymakers" and the Complaint contains specific allegations as to the role of these officials/policymakers in the claimed constitutional violations.

Plaintiffs do not plead that Bliemeister directly participated in the Lincoln Police Department/Lancaster County Sheriff's Office's response to the protest. However, Plaintiffs do allege that the officials were involved in policymaking decisions which authorized or directed the officers' conduct at the protest, and that the officials are at fault for allowing officers without the appropriate training to use less lethal munitions for crowd control. Specifically, the complaint alleges the Officials acted with deliberate indifference in: equipping their officers with less lethal weaponry without proper training and instruction; authorizing, both explicitly and implicitly, the indiscriminate use of less-lethal force against protestors who did not pose a safety threat; and failing to supervise and discipline officers regarding the appropriate use of force against protestors. (Filing No. 1 at CM/ECF p. 11 ¶ 55). The complaint alleges a claim against Bliemeister in his individual capacity.

3.      Governmental Entity Claims: County and City Liability

Plaintiffs allege that the City and County are liable for violations of Plaintiffs' constitutional rights because they adopted an unlawful policy, practice, or custom of using excessive force against protestors engaging in constitutionally protected speech and assembly. Defendants move to dismiss these claims.

---

[3] The County makes no specific argument as to Wagner. Therefore, the court will consider the individual capacity supervisor liability claim as to only Bliemeister. The court makes no comment on the merits of the-is individual capacity claim as to Wagner.

Under Monell, a municipality or County cannot be held liable under § 1983 solely because it employs a tortfeasor: A governmental entity cannot be held liable under § 1983 on a respondeat superior theory. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691 (1978). Rather, the City of Lincoln and the County of Lancaster may be liable for a law enforcement officer's constitutional violation only if the violation resulted from an official policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee. Bolderson v. City of Wentzville, 840 F.3d 982, 985 (8th Cir. 2016) (citing Atkinson v. City of Mountain View, 709 F.3d 1201, 1214 (8th Cir. 2013)). For a governmental entity to be liable under § 1983, the constitutional deprivation must have been "committed pursuant to an official custom, policy, or practice," or the violation must be "so pervasive among non policymaking employees [sic] ... 'as to constitute a custom or usage with the force of law.' " Granda v. City of St. Louis, 472 F.3d 565, 568 (8th Cir. 2007)

a.   Policy

An unconstitutional "policy" may be inferred from a single act.

A 'policy' is a 'deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible under state law for establishing final policy with respect to the subject matter in question.' " Russell [v. Hennepin County, 420 F.3d at 847 (2005)](quoting Hayes v. Faulkner Cnty., 388 F.3d 669, 674 (8th Cir. 2004)). Although "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." Davison, 490 F.3d at 659 (internal quotation marks and citations omitted); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("[W]here action is directed by those who establish governmental policy, the

municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."); Angarita v. St. Louis Cnty., 981 F.2d 1537, 1547 (8th Cir. 1992) ("As a final policymaker for the department, any action taken by [Defendant] constitutes the policy of St. Louis County in these circumstances.").

Agnew v. St. Louis Cty., No. 4:19-CV-03063-SEP, 2020 WL 7023933, at *10 (E.D. Mo. Nov. 30, 2020). So even when a Plaintiff lacks evidence of a continuing widespread pattern of misconduct, the plaintiff could still prove a municipal liability claim based on an alleged unconstitutional decision made by the officials responsible for setting policy. Agnew, at *11.

Here, Plaintiffs allege Wagner and Bliemeister are sufficiently senior in rank or authority that their decisions "may fairly be said to represent official policy" of their respective law enforcement departments. They allege the City and County, acting through Wagner and Bliemeister, adopted and/or ratified municipal policies in response to the protestors that led to the alleged violations.

Citing Bernini v. City of St. Paul, 665 F.3d 997 (8th Cir. 2012) both the City and the County argue that dismissal is warranted because the use of less-lethal munitions as a means of crowd control is constitutional. But in Bernini, the police were responding to a crowd attempting to "break through the police line," a markedly different situation to that alleged in this case. Here, the allegations allege excessive force was used to break up a protest by nonviolent misdemeanants who posed little or no threat to the security of the officers or the public.

Moreover, although Defendants argue that plaintiff did not identify a specific policy "that allegedly caused the Plaintiff's claimed damages," (Filing No. 18 at CM/ECF p. 10; Filing No. 22 at CM/ECF p. 16), a civil rights plaintiff need not specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588,

591 (8th Cir. 2004), citing Doe v. Sch. Dist. of Norfolk, 340 F.3d 605, 614 (8th Cir.2003).

> [A] plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right. Moreover, such a holding would disregard the liberality of Fed.R.Civ.P. 8(a)(2) which requires merely "a short and plain statement of the claim showing that the pleader is entitled to relief," and 8(f), which states "pleadings shall be so construed as to do substantial justice."

Id.

Plaintiffs have alleged the policymakers. Bliemeister and Wagner, decided to provide less lethal weaponry to officers who were not trained on how to use it, and they authorized the use of such weaponry against peaceful protesters. They allege this policy caused a constitutional deprivation. Plaintiffs' complaint sufficiently alleges facts supporting claims against the County and City for implementing a policy that violated Plaintiffs' constitutional rights.

b.    Custom

Unlike official policy claims, to establish a Monell custom claim, the plaintiff must show:

> 1)    The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2)    Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

Johnson v. Douglas Cty. Med. Dep't, 725 F.3d 825, 828 (8th Cir. 2013) (quotation omitted). See also Ware v. Jackson County, Mo., 150 F.3d 873, 880 (8th Cir. 1998).

Allegations of continuing, widespread use of excessive force against protesters supports a claim for custom and practice municipal liability. See Tirado v. City of Minneapolis, No. 20-cv-1338, 2021 WL 679261, at *5 (D. Minn. Feb. 22, 2021) (finding Plaintiffs' allegations of excessive force during the George Floyd protests plausibly alleged a continuing, widespread, and persistent pattern of unconstitutionally excessive force exercised against protesters; Samaha v. City of Minneapolis, No. 20CV01715SRNDTS, 2021 WL 931243, at *6 (D. Minn. Mar. 11, 2021)(finding allegations of several incidents of using force against numerous protesters every day of the protests in May 2020, and in different places across the city, supported Plaintiffs' claim that officers acted pursuant to an unofficial custom).

In this case, plaintiffs allege that the Defendants have "adopted and/or ratified municipal policies, practices and customs that have caused violations" listed in the complaint. As facts supporting this alleged custom, Plaintiffs point to Poole's personal experiences during the protests from May 30 to May 31, 2020. Within this timeframe, Poole alleges that while she and others protested peacefully, Lincoln Police Officers and Lancaster Sheriff Deputies deployed less-lethal munitions against protesters indiscriminately using excessive force and aggressive dispersal tactics. (Filing No. 1 at CM/ECF p. 5).

While allegations involving alleged police misconduct on two consecutive days may not ultimately support a claim that Plaintiffs' injuries arose from a continuing, widespread, and persistent pattern of unconstitutionally excessive force, I am not inclined to dismiss this allegation at this stage of the case. The

complaint does not allege, but the plaintiffs may not or cannot know without discovery, the full extent (and number of times) the City and County used the crowd control methods at issue on March 30 and March 31, 2020, and to what extent they used this means in the past. A complaint is not deficient because it failed to incorporate language specifically alleging the "existence of an unconstitutional policy or custom." Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004). Plaintiffs have alleged sufficient facts to trigger municipal liability based on an unofficial municipal custom.

### c.    Failure to Train or Supervise

To state a viable § 1983 claim for "failure to train" against a municipality, Plaintiff must "plead facts sufficient to show that (1) [the municipality's] [ ]training practices were inadequate; (2) [the municipality] was deliberately indifferent to the rights of others in adopting these training practices, and [the municipality's] failure to train was a result of deliberate and conscious choices it made; and (3) [the municipality's] alleged training deficiencies caused [Plaintiff's] constitutional deprivation." Jones v. Nebraska Dep't of Correction Servs., No. 8:20CV365, 2021 WL 490388, at *7 (D. Neb. Feb. 10, 2021) (quoting Ulrich v. Pope Cty., 715 F.3d 1054, 1061 (8th Cir. 2013).

Plaintiffs allege the Officials, as the policy makers for the City and County, acted with deliberate indifference in equipping their officers with "less lethal" weaponry without providing proper training or instruction. Plaintiffs allege that Wagner acknowledged that the officers "didn't have the equipment or the training necessary to perform the type of crowd control the Officials ordered" specifically saying that the officers involved had not been trained in crowd control and lacked a "basic orientation in crowd control tactics." (Filing No. 1 at CM/ECF pp. 10-11, ¶ 54). Plaintiffs allege the Officials failed to properly train officers on the use of "less

lethal" weaponry, failed to supervise and discipline officers regarding the appropriate use of force against protestors who did not pose a safety threat, and failed to rectify the unconstitutional custom of using less-lethal force to control and suppress demonstrations. (Filing No. 1 at CM/ECF pp. 11, ¶ 55) Ultimately, they allege, their constitutional rights were violated due to the failure to train and/or supervise.

As alleged in the complaint, the munitions supplied to the officers and deputies may have been less lethal, but they could be deadly or cause severe injury. By inference, a factfinder could find that such munitions should not be distributed for use by untrained officers, particularly to impose crowd control against peaceful citizens. I find Plaintiffs' complaint contains sufficient facts to support a Monell claim against the City and County for failure to train.

B.  State Law Negligence

The City and County Defendants each argue that the negligence claim under state law should be dismissed for failure to state a claim upon which relief can be granted, and for lack of subject matter jurisdiction.

Under Nebraska law, tort actions against political subdivisions of the State of Nebraska are governed by the Political Subdivisions Tort Claims Act ("PSTCA") Neb. Rev. Stat. § 13-901 et seq. The City of Lincoln and Lancaster County are Nebraska political subdivisions. Neb. Rev. Stat. § 13-903. The Nebraska Legislature, through the PSTCA, waived sovereign immunity for negligence claims against the political subdivisions and their employees, but the PSTCA does not apply to actions against political subdivisions or their employees for alleged intentional torts. Neb. Rev. Stat. § 13-902.

Defendants argue that although the Plaintiffs attempt to cast their PSTCA claim as a negligence action, the claim actually arises from an assault and battery, and as such, the Nebraska Legislature has not waived sovereign immunity regarding such claims. Neb. Rev. Stat. § 13-910(7). Interpreting the PSTCA, the Nebraska Supreme Court recently held that the ordinary meaning of "arising out of" an assault and battery covers any case in which an assault or battery is essential to the claim. Moser v. State, 948 N.W.2d 194 (Neb. 2020). Assault is defined as the "threat or use of force on another that causes that person to have a reasonable apprehension of imminent harmful or offensive contact." Black's Law Dictionary (11th ed. 2019). Battery includes actual infliction of an unconsented injury, or contact inflicted upon a person without their consent. See Aguilera v. City of Omaha, No. 8:19-CV-239, 2019 WL 10896965, at *2 (D. Neb. Oct. 23, 2019), citing Britton v. City of Crawford, 803 N.W.2d 508, 515 (Neb. 2011).

Citing Doe ex rel. Doe v. Omaha Pub. Sch. Dist., 727 N.W.2d 447, 457 (2007), Plaintiffs argue that "the Nebraska Supreme Court has cautioned against dismissal of negligence claims at the pleading stage, recognizing the fact intensive nature of the PSTCA's exceptions." However, Moser overruled Doe, describing it as an "outlier in that it is inconsistent with our prior and subsequent case law generally setting forth a broad definition of the phrase 'arising out of an assault or battery.'" Moser v. State, 307 Neb. 18, 948 N.W.2d 194 (2020)[4]. "A broad definition is consistent with the plain language of that phrase, which suggests that if a claim would not exist without an assault or battery, it arises out of that battery. . .." Id. at 202. The Nebraska Supreme Court repeated this analysis in Edwards v. Douglas County, 953 N.W.2d 774 (2021), stating:

---

[4] The claims in Moser relate to the State Tort Claims Act, however "Because the assault and battery exceptions of the STCA and the Political Subdivisions Tort Claims Act (PSTCA) are nearly identical, cases construing the PSTCA are applicable to cases under the STCA and vice versa. Moser v. State, 948 N.W.2d at 201.

We have said the exemption applies whenever an assault "is essential to the claim," and it bars claims against the government which "sound in negligence but stem from [an assault or] battery." We have also said the exemption encompasses claims that "would not exist without an assault or battery," and claims which are " 'inextricably linked to [an assault or] battery.' " All of these articulations speak to the same point: when a tort claim against the government seeks to recover damages for personal injury or death stemming from an assault, the claim necessarily "arises out of assault" and is barred by the intentional tort exemption under the PSTCA. The plain language of the exemption and our principles of strict construction require this result no matter how the tort claim has been framed and regardless of the assailant's employment status.

Id. at 756.

Plaintiffs' complaint alleges that when officers fired rubber bullets "indiscriminately into crowds," a bullet hit Poole's nose, causing severe injuries. Without question, that injury arose from an assault and/or battery. Plaintiffs' state law negligence claim is barred by sovereign immunity and must be dismissed.

## II. Motion to Strike

The County Defendants move to strike portions of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(f), specifically the photographs contained therein, and paragraphs 19, 20, and 21 regarding the circumstances of George Floyd's death in Minnesota in May 2020. (Filing No. 17).

Fed. R. Civ. P. 12(f) allows the court, on its own or on a party's motion, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) is "permissive" and grants the court liberal discretion when ruling on motions to strike. Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000). However, courts view motions to strike with

disfavor because striking a pleading is an "extreme measure." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007). "[T]he rule's purpose is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case." Williams v. Averitt Express, No. 8:15CV464, 2016 WL 589861, at *2 (D. Neb. Feb. 11, 2016).

Motions to strike are often considered "time wasters," and should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy." Infogroup, Inc., v. DatabaseLLC, 95 F.Supp. 3d 1170, 1194 (D. Neb. 2015); Lane v. Page, 272 F.R.D. 581, 591-94 (D.N.M. 2011) (Citing 5C C. Wright and A. Miller, Fed. Prac. & Proc. Civ. § 1382 (3d ed. 2004). Even matters that are not 'strictly relevant' to the principal claim at issue should not necessarily be stricken, if they provide 'important context and background' to claims asserted or are relevant to some object of the pleader's suit." Osentowski v. Yost, No. 8:16CV331, 2016 WL 5375996, at *2 (D. Neb. Sept. 26, 2016), citing Holt v. Quality Egg, L.L.C., 777 F. Supp. 2d 1160, 1168 (N.D. Iowa 2011).

Defendants' motion to strike asserts the contents of paragraphs 19-21 "provide a narrative about an ongoing criminal matter in another state that is immaterial to this case." (Filing No. 18 at CM/ECF p. 21). While it is true that these paragraphs would not entitle Plaintiff to any relief, they do provide context as to why the protesters in Lincoln, including Plaintiff, gathered in the days following Floyd's death. (See Filing No. 1 at CM/ECF p. 5 ¶ 22). There is a logical connection to the subject matter of this controversy, and these paragraphs will not be stricken.

As to the photographs, the County Defendants argue "[t]he Federal Rules of Civil Procedure do not permit photographs to be used in complaints." (Filing No. 18, at CM/ECF p. 20). I do not endorse this blanket rule. In some cases, (e.g.,

claims alleging misappropriation of a trademark or copyright) a picture can truly be worth, and effectively replace, a thousand words.

While some are graphic, the photographs in Plaintiffs' complaint allegedly show: (1) the location of the protesters on the night of Poole's alleged injuries; (2) the position of the law enforcement officers as they moved toward the protesters; and, (3) the aftermath of Poole's encounter with the gathered officers. There is a relationship and logical connection between the photographs and the subject matter of this action, and the plaintiffs' use of photographs is not overdone or perceived as a ploy to garner public attention to this case. Therefore, the County's motion to strike will be denied.

Accordingly,

IT IS ORDERED:

1)  Defendants' motions to dismiss for failure to state a claim, ([Filing No. 17](); [Filing No. 20]())), are granted in part and denied in part. Count III (Fourteenth Amendment) and Count V (PSTCA) are dismissed.

2)  The County Defendants' motion to strike is denied (Filing No. 17).

3)  The parties shall review the Nebraska magistrate judges' practices posted at the court's Civil Case Management website page.[5]

4)  Counsel for the parties shall confer and, on or before August 13, 2021, they shall jointly file a Rule 26(f) Report, a copy of which can be found at http://www.ned.uscourts.gov/forms.[6] Unless the parties agree otherwise, Plaintiff(s) shall prepare the initial draft of the Report and then forward it to Defendant(s) for further additions or revisions.

5)  On or before August 3, 2021, a party shall contact the chambers of the undersigned magistrate judge to set a conference call if:

---

[5](https://www.ned.uscourts.gov/attorney/judges-information/civil-case-management).
[6] See https://www.ned.uscourts.gov/forms. The parties are hereby notified or reminded that the Rule 26(f) Report for civil cases pending in the District of Nebraska has been substantially modified, with an effective date of June 11, 2020. **DO NOT** use prior versions of this report.

a. One or more of the parties believes a planning conference is needed to complete the Rule 26(f) Report; or

b. The parties cannot agree on one or more of the deadlines identified or case progression issues raised in the Rule 26(f) Report; or

c. The parties are currently and actively pursuing settlement and believe preparing and filing a Rule 26(f) Report may be unnecessary.

6) Mandatory disclosures shall be served by August 27, 2021.

Dated this 13th day of July, 2021.

BY THE COURT:

_s/ Cheryl R. Zwart_
United States Magistrate Judge